James A. BRIEN, Petitioner, Appellant,

v.

UNITED STATES of America,
Respondent, Appellee.

No. 82–1387.

United States Court of Appeals,
First Circuit.

Submitted Sept. 17, 1982.

Decided Dec. 8, 1982.

James A. Brien on brief pro se.

William F. Weld, U.S. Atty., and Charles K. Mone, Asst. U.S. Atty., Boston, Mass., on brief for appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

James A. Brien appeals from the district court's denial of his petition brought under 28 U.S.C. § 2255 to vacate sentence. Brien was convicted after a trial at which he was represented by an attorney who belonged to the same law firm as the attorney of a co-defendant. Asserting that this constituted a conflict of interest, Brien contends that he was denied the effective assistance of counsel in violation of the sixth amendment.

Brien was indicted in August 1978 for conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 371 and for fraud in violation of 18 U.S.C. § 1341. The charges stemmed from his involvement with Lloyd, Carr & Co., a commodities trading firm located in Boston, of which Brien had become the vice-president. Alan Abrahams, a/k/a Lloyd Carr, the firm's principal, was indicted at the same time.[1]

Following their indictment, both Brien and Abrahams were represented by attorneys from the law firm of F. Lee Bailey, which had been retained under a flat fee arrangement by Lloyd, Carr & Co. in order to defend company employees from criminal charges. Lloyd, Carr & Co. paid the law firm an initial advance payment of $125,-000, half of the fee agreed upon. In September 1978, the Receiver for the now bankrupt estate of Abrahams entered a complaint in the district court seeking return of the $125,000 to the estate. The Receiver asserted that the payment had been made without present consideration.

In the fall of 1978, both Brien and Abrahams filed motions for severance and a change of venue. Anthony Cardinale, an associate of F. Lee Bailey's law firm, filed Abrahams's motion. In a supporting affidavit, Cardinale stated that he was currently counsel for both Brien and Abrahams and that "there exists an extreme and inexorable conflict" between the anticipated defenses of Brien and Abrahams. Cardinale further attested that Brien's defense intended to introduce evidence establishing that Brien had no knowledge of Abrahams's prior criminal record, and that all actions taken by Brien were based on the advice of Abrahams, whom Brien believed to be an experienced legitimate businessman.

Brien's motion was filed by Kenneth J. Fishman, another associate of the Bailey law firm. His motion stated that severance was warranted because of the adverse publicity given to some of the co-defendants and because the government might introduce statements of other co-defendants that would inculpate Brien. There was no mention of a conflict of interest arising from anticipated defenses and no affidavit was filed.

The severance motions were heard on November 25, 1978 in the District Court for the District of Massachusetts. At the hearing, Mr. Cardinale stated that he would have to withdraw from representing Brien if there was no severance as "there is no way in the world that I could represent him without an obvious conflict."[2]

---

1. Five others associated with Lloyd, Carr & Co. were indicted at the same time.

2. The record reflects the following interchange between the court and Mr. Cardinale:

   THE COURT: Mr. Cardinale, I also note that you represent James A. Brien.

MR. CARDINALE: Yes, Your Honor.
THE COURT: Have you filed a motion to sever in his case because he cannot get a fair trial and be connected with Mr. Abrahams?
MR. CARDINALE: We have, Your Honor. It is connected with the motion for change of venue, alternatively on behalf of the defend-

In December 1978 the district court granted Abrahams's motion for a severance and change of venue, but denied Brien's. Brien was tried and convicted in Massachusetts in March 1979 with Cardinale serving as Brien's defense attorney. The defense called no witnesses. Abrahams was tried the following year in New York. During the course of those proceedings he pleaded guilty.

Brien appealed from his conviction to this court and his conviction was affirmed in February 1980. *United States v. Brien,* 617 F.2d 299 (1st Cir.), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980). On his appeal Brien was represented by a different attorney, Daniel Kornstein of New York. No issue of ineffective assistance of counsel was raised in the direct appeal, although Brien did raise the claim in a motion for a new trial that was filed pro se on January 10, 1980. The motion was denied without a hearing. Brien thereafter raised the issue with the aid of counsel in two motions for a reduction of sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure filed on August 18, 1980 and December 15, 1980, respectively. Both of these motions were also denied without a hearing.

On December 15, 1980, Brien filed the present section 2255 petition claiming that Cardinale had been burdened by a conflict of interest arising from the joint representation of Brien and Abrahams and the fee litigation in the bankruptcy court.[3] Brien asserted that because of the conflict, Cardinale failed to call both Brien and Abrahams to testify, and to vigorously interrogate and then call other potential witnesses. Brien further argued that under the supervisory rule announced in *United States v. Foster,* 469 F.2d 1 (1st Cir.1972), the district judge had the duty to warn Brien about the dangers of joint representation, and that because the judge failed to give the warnings, the government had the burden of proving an unlikelihood of prejudice. *Id.* at 5.

The district court held an evidentiary hearing on Brien's petition.[4] It concluded

---

ant Brien, and preliminarily may I say this—obviously if we have a joint trial, I would have to withdraw from the defendant Brien's case. The way that the case is unfolding there is no way in the world that I could represent him without an obvious conflict.
THE COURT: Who will represent Mr. Abrahams at trial?
MR. CARDINALE: Mr. F. Lee Bailey will, Your Honor.
THE COURT: All right. Your office will then get out of the case against Brien?
MR. CARDINALE: If there is a joint trial, yes, Your Honor. On behalf of the defendant Brien my associate, Mr. Fishman, will raise some of the matters with respect to the change of venue. Our change of venue motion for Mr. Brien is alternative—either give me a change of venue or a severance pinioning most of his prejudice claim on the publicity that affects Mr. Abrahams directly.
THE COURT: Are you saying that if there is a change of venue, there will be no prejudice to Mr. Brien being connected with Mr. Abrahams in the same trial?
MR. CARDINALE: No, Your Honor.
THE COURT: You said it was in the alternative.
MR. CARDINALE: I am saying that alternatively a change of venue with Mr. Abrahams won't accomplish our purposes. I don't think any of these defendants, if they are going to raise this defense, should be tried

along with Mr. Abrahams. I guess that a best of all possible worlds would be a change of venue for everybody, but a different change of venue for Mr. Abrahams and a separate trial.
That is basically our claim on behalf of the defendant Brien, Your Honor.

3. Brien claims that the fee litigation had two effects upon Cardinale's representation. First, he claims that because there was a flat fee arrangement and only half of the fee had been paid, Cardinale was constrained by cost considerations and failed to conduct a vigorous defense. Second, he argues that because the law firm had to justify its retention of the fee before the bankruptcy court, Cardinale failed to move the district court for his withdrawal from the case due to a conflict of interest.

4. At the evidentiary hearing the government's only submission was a deposition of Cardinale in which he denied the assertions made by Brien and justified his actions as fully supported by tactical considerations. Brien, acting pro se, called three witnesses purportedly to discredit Cardinale's testimony and show that certain defenses would have been available. Brien also attempted to introduce several affidavits and depositions taken in connection with a civil case pending before the U.S. District Court for the Northern District of Georgia, *Westlake v. Abrahams,* CA No. L–78–55A, but

in a memorandum issued on April 22, 1982 that the warning required by *Foster* had not been necessary because of the severance of Abrahams's trial, and that Brien therefore had the burden of proving "an actual conflict of interest that adversely affected his lawyer's performance," *quoting Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). The court further held that Brien failed to establish an actual conflict and found that Cardinale's actions were all justified by legitimate tactical considerations.[5]

In this appeal Brien reiterates that it was error for the trial judge not to have warned him of the dangers of joint representation. This failure, he contends, under *Foster,* forces upon the government the burden of disproving prejudice. And even if the burden were otherwise, Brien urges us to find a prejudicial conflict of interest here.

■ Before turning to the merits of Brien's claims, a preliminary matter must be discussed. The government has argued that the Supreme Court's recent opinion in *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), compels the application of the "cause and actual prejudice" standard of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), to this case because Brien did not raise his claim either during the trial or on direct appeal.

This case is very different from *Frady.* The error Frady sought to litigate by means of a section 2255 petition which he filed long after his conviction, was one that he should have raised in the original criminal proceeding both by objection and on direct appeal. Emphasizing that "a final judgment commands respect" and that "a collateral challenge may not do service for an

appeal," 456 U.S. at 165, 102 S.Ct. at 1593, the Court held that for Frady now to succeed he must show "cause" excusing his double procedural fault, and "actual prejudice," at 168, 102 S.Ct. at 1594.

Brien's situation is not the same. Unlike Frady, Brien could not have been expected to raise his inadequate assistance claim at trial, since he was then dependent for advice upon his allegedly inadequate attorney. Nor, although he had a different attorney by then, could Brien have raised his claim on direct appeal. While some ineffective assistance claims might be capable of presentation solely on the record of the criminal trial itself, most such claims require the independent development of evidence outside of, and collateral to, the criminal proceeding. In the instant section 2255 proceeding, the district court properly determined that Brien's claim warranted allowing him to present witnesses in support of his charge that significant evidence had been available which Mr. Cardinale failed to use. By the same token, Cardinale's deposition explaining and defending his own conduct of the case was essential. None of this evidence formed part of the record in the direct appeal, which was limited to matters presented at the criminal trial. *See United States v. Campa,* 679 F.2d 1006, 1014 (1st Cir.1982); *United States v. Santiago Barbosa,* 666 F.2d 704, 708 n.6 (1st Cir.1981); *United States v. Carlson,* 561 F.2d 105, 109 (1st Cir.), *cert. denied,* 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977).

Thus, unlike *Frady,* this is a case where the claim could only be presented in a collateral proceeding at which evidence could be taken, such as in a post-conviction motion or a section 2255 petition. We note, moreover, that Brien acted expeditiously. His pro se motion for new trial citing the present ground was filed while his direct

these were ruled inadmissible hearsay. The question of their admissibility was not raised on appeal.

5. The court found that the fee arrangement created a "potential conflict," but that it did not "ripen" into an actual conflict. In reaching the latter conclusion, the court examined each

of the specific allegations raised by Brien as to Cardinale's representation. The court found that Cardinale's actions were fully justified by tactical considerations and that Brien would not have been acquitted if Cardinale had acted differently. The court found that Cardinale had conducted a vigorous and creative defense.

appeal was pending. This was denied without hearing. He filed the present section 2255 petition that same year, several months after summary denial of his Rule 35 motion which also raised the issue. Accordingly, without the circumstances which underlay the requirement in *Frady* we believe its standard to be inapplicable here.[6]

We turn now to Brien's claim. Brien first argues that his case is controlled by this court's decision in *United States v. Foster,* 469 F.2d 1 (1st Cir.1972). In that case we announced a supervisory rule requiring district judges to inform defendants represented by the same attorney about the dangers of joint representation. We further stated that the government would bear the burden of proving that the defendants were not prejudiced by the joint representation whenever the required warnings were not given.

■ Brien contends that he should have been given *Foster* warnings because of the fact that both he and Abrahams were represented by the same law firm. He claims that the severance of Abrahams's trial did not alleviate the need for the warnings. We agree that severance is not a total cure for the dangers arising from joint representation. Indeed, the 1979 amendments to Rule 44(c) of the Federal Rules of Criminal Procedure recognize that fact and require judges to warn defendants about the hazards of joint representation whenever the defendants are either tried together or jointly indicted.[7] Thus had Rule 44(c) been in effect at the time of Brien's trial, the judge would have been under the clear obli-

gation to warn Brien about the problems of joint representation. But Rule 44(c) was not in effect when Brien was tried.[8] And neither *Foster* nor any of its progeny, *e.g., United States v. Donahue,* 560 F.2d 1039 (1st Cir.1977); *United States v. Martorano,* 620 F.2d 912 (1st Cir.) (en banc), *cert. denied,* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980), referred explicitly to severed trials. Therefore, we cannot say that a district judge sitting at the time Brien's case arose would have understood that he was obliged to give such a warning *sua sponte.* Because "[w]e do not require the court to predict cases elaborating duties imposed pursuant to our supervisory powers," *United States v. Waldman,* 579 F.2d 649, 652 (1st Cir.1978), it would be inappropriate to impose *Foster*'s burden-shifting requirement here. *See also Foster,* 469 F.2d at 4 (rule announced for prospective application only). We therefore review Brien's claim pursuant to sixth amendment standards but without reference to the burden-shifting required by *Foster* when the necessary judicial warnings are not given.

■ In *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Court stated, regarding multiple representation, "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 100 S.Ct. at 1718. Thus a mere showing of multiple representation is not enough; to obtain a new trial, a defendant must show "an actual conflict of interest." The *Cuyler* Court went on to stress,

---

6. We do not say that the "cause and actual prejudice" standard *might never apply to* an ineffective assistance claim. If the claim could reasonably have been raised on direct appeal and was not, or if other circumstances reflected a lack of diligence, the principles in *Frady* might apply. *Cf. United States ex rel. Williams v. Franzen,* 687 F.2d 944, 950 (7th Cir.1982).

7. Rule 44(c) states:
(c) Joint Representation. Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel

who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

8. Brien was convicted in March 1979. The Rule was amended in April 1979 and took effect on December 1, 1980.

however, that a defendant "who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice. . . ." *Id.* at 349, 100 S.Ct. at 1718.[9] But as this circuit has indicated, the conflict must be real, not some attenuated hypothesis having little consequence to the adequacy of representation. *United States v. Martorano,* 620 F.2d at 916. The question before us, therefore, is whether the district court erred in finding an absence of actual conflict.[10] *See Baty v. Balkcom,* 661 F.2d 391 (5th Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982); *United States v. Ramsey,* 661 F.2d 1013 (4th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *Bryan v. United States,* 645 F.2d 842 (9th Cir.), *cert. denied,* 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 114 (1981).

■ In order to establish an actual conflict of interest, the petitioner ordinarily must prove two elements. First, he must demonstrate that some plausible alternative defense strategy or tactic might have been pursued. *Foxworth v. Wainwright,* 516 F.2d 1072, 1079 (5th Cir.1975). He need not show that the defense would necessarily have been successful if it had been used, but merely that it possessed sufficient substance to be a viable alternative. *Id.* Second, he must establish that the alternative defense was inherently in conflict with the attorney's other loyalties or interests. *United States v. Martorano,* 620 F.2d at 917; *Foxworth v. Wainwright,* 516 F.2d at 1079. Brien has not made these showings.

■ Brien argues that the potential conflict prevented his attorney from calling possible witnesses and turning over exculpatory evidence. Upon careful examination, however, the tactics Brien suggests that his attorney could have pursued appear to be merely hypothetical choices that in reality could not have benefited Brien and were often not in any conflict with Cardinale's other loyalties.

Brien first claims that Cardinale failed to interview and call several witnesses on Brien's behalf. The only possible beneficial testimony that Brien points to, however, concerns the so-called "green bag," a bag containing false identifications that Abrahams left with Brien's girlfriend when he was fleeing the FBI. The girlfriend turned

9. Some commentators believe that the Court's reference to a conflict that "adversely affected his lawyer's performance" reintroduced the prejudice standard. *E.g., Developments in the Law—Conflict of Interest in the Legal Profession,* 94 Harv.L.Rev. 1244, 1390 (1981). But see Justice. Marshall's contrary suggestion. 446 U.S. at 358, 100 S.Ct. at 1723 (Marshall, J., concurring in part and dissenting in part). *Cuyler* would seem to indicate that a "lapse in representation" must be discernible, *id.* at 349, 100 S.Ct. at 1719. *See United States v. Martorano,* 620 F.2d at 915 n. 3. *See also Honneus v. United States,* 509 F.Supp. 1135, 1139 (D.Mass. 1981), *cf. United States ex rel. Williams v. Franzen,* 687 F.2d at 950 (where two defendants represented by same attorney have inconsistent stories, adverse effect is assumed).

10. In *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981), the Supreme Court announced what appears to be a prophylactic rule requiring judges to conduct an inquiry about potential conflicts of interest when they know or reasonably should know that a conflict might exist. *Id.* at 272 n. 18, 101 S.Ct. at 1104 n. 18. Some courts, looking to *Wood*'s language stating that a reversal is "mandated" when the required inquiry is not conducted

have assumed that the trial court's failure to inquire about potential conflicts in and of itself requires a reversal of the conviction. *See, e.g., Wilson v. Morris,* 527 F.Supp. 422 (C.D.Ill. 1981); *Walker v. Garrington,* 521 F.Supp. 1313 (M.D.Tenn.1981). *See also United States v. Green,* 680 F.2d 183, 193 (D.C.Cir.1982) (Bazelon, J., dissenting). Were that a correct reading of *Wood,* reversal would be required here because there was a possible conflict that the district court was made aware of and no inquiry was conducted prior to conviction. The Court in *Wood,* however, was faced with a similar situation and it did not require an automatic reversal of the conviction but merely remanded the case to enable the trial court to conduct the necessary inquiry, the implication being that the convictions would only be overturned if an actual conflict were found. Here the section 2255 hearing can serve the same function that the remand served in *Wood,* enabling our review to focus upon the question of whether there was an actual as opposed merely to a hypothetical and unreal conflict. *See United States v. Taylor,* 657 F.2d 92 (6th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981).

the bag over to Brien's father who contacted the state police and eventually gave the bag to Cardinale. Discussions ensued as to whether the bag should have been turned over to federal authorities. It was not, apparently upon Cardinale's advice. Brien now claims that witnesses to those events could have been called at trial to testify in support of a "good faith" defense. The district court, however, after a detailed and careful analysis of the record found that the introduction of such testimony, and the introduction of the bag itself, could not have helped Brien. If anything, testimony that Abrahams entrusted incriminating evidence to Brien's girlfriend could have served to link Brien even closer to Abrahams in the jurors' minds, exactly what the defense hoped to avoid doing. Given the court's familiarity with the case, after having presided over the original trial, we think that its conclusion as to this matter is entitled to considerable respect. *See Brown v. United States,* 665 F.2d 271 (9th Cir. 1982). We recognize that the district court was being asked to upset a conviction over which it had presided, and that its own handling of the representation issue was under attack. The court, however, went out of its way to conduct an extensive evidentiary hearing and permitted Brien considerable leeway in the presentation of evidence. We find the court's analysis convincing and well supported in the record.

Brien also contends that he received ineffective assistance because Cardinale refused to call Abrahams to the witness stand. Admittedly, an attorney representing Abrahams would for that reason alone have been reluctant to have Abrahams testify at Brien's trial. Nevertheless, Brien has introduced no evidence establishing what Abrahams might have said and how his testimony might have helped Brien. Indeed, that his testimony would not have contributed to a defense that was predicated upon separating the defendants from Abrahams can be seen from the fact that none of Brien's other co-defendants, even though they had independent counsel, called Abrahams to testify. Moreover, given the fact that Abrahams himself was then awaiting his own trial, it is highly doubtful that he would have agreed to testify in any event.[11] There is no convincing evidence that he would, or that if he had done so he would have said anything helpful to Brien.

Brien's claim that Cardinale did not call Brien to testify because of an actual conflict is similarly unfounded. Brien offers no evidence as to what he could have said to exculpate himself had he testified. Nor is there any reason to believe that his testimony would have been adverse to Abrahams. As the district court noted, when Brien testified at Abrahams's sentencing hearing, his testimony was totally supportive of Abrahams's own position.

Brien's final contention is that Cardinale failed to cross-examine witnesses adequately. Once again, however, Brien has presented no evidence suggesting how a more vigorous cross-examination could have helped his case. Moreover, the district judge found that Cardinale conducted a "thorough and thoughtful" cross-examination. We see nothing in the record to the contrary. Nor do we find any other evidence of plausible defenses not presented that might have benefited Brien and were adverse to either Abrahams or the law firm of F. Lee Bailey.

For all of the reasons expressed, we find that neither the joint representation nor the fee litigation created an actual conflict of interest that adversely affected Brien's representation.

*Affirmed.*

---

**11.** The district court found that Cardinale's decision not to call Abrahams could be supported by reasonable strategic reasons. We find that irrelevant. Brien does not have to show that the alternatives he suggests would have been used but for the conflict, he merely has to show that they were plausible options foreclosed because of Cardinale's competing interests.