772 F.2d 909
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
BRUCE GRANT, SR., DEFENDANT-APPELLANT.
 NO. 84-1191
 United States Court of Appeals, Sixth Circuit.
 8/19/85
 
 E.D.Mich.
 AFFIRMED
 On Appeal from the United States District Court for the Eastern District of Michigan, Southern Division
 Before: KEITH and KENNEDY, Circuit Judges; and DOWD,* District Judge.
 PER CURIAM.
 
 
 1
 This appeal involves the question whether appellant received the effective assistance of counsel at his trial. A grand jury indicted Bruce Grant, Sr., the appellant, on two counts of concealment of bankruptcy assets under 18 U.S.C. Sec. 152[1] and one count of forcible rescue of property lawfully seized by the Internal Revenue Service under 26 U.S.C. Sec. 7212(b).[2] A jury convicted appellant on one count of concealment of bankruptcy assets and on the forcible rescue of seized property count. The District Court sentenced appellant to concurrent terms of three years for violating 18 U.S.C. Sec. 152 and two years for violating 26 U.S.C. Sec. 7212(b), but later suspended both sentences, placed defendant on four years probation, and ordered appellant to perform 400 hours of community service.
 
 
 2
 Appellant contends that defense counsel's conflict of interest deprived him of the effective assistance of counsel that the sixth amendment guarantees. Following the trial but before sentencing, appellant wrote a letter to Judge Horace W. Gilmore asking the District Court to appoint a new attorney. The letter alleged: 'There have been several items of defense that should have been presented at my trial. This was not done because it would have presented a conflict of interest with my attorney.' The District Court conducted a hearing. At the hearing, appellant stated that his privately retained defense counsel, Clyde Pritchard, refused to call his son, Bruce Grant, Jr., as a witness. Appellant contends that his son had admitted guilt and that his son's testimony would have exonerated appellant. Appellant's attorney had also represented appellant's son, whom the grand jury did not indict. Defense counsel acknowledged that appellant wanted him to call appellant's son as a witness but indicated that he did not do so because appellant's son had testified before the grand jury and the son's testimony had implicated appellant. After the hearing, Judge Gilmore denied appellant's request to have his attorney removed as defense counsel before sentencing. For the reasons stated below, we affirm appellant's convictions.
 
 
 3
 In Strickland v. Washington, 104 S. Ct. 2052 (1984), the Supreme Court articulated a two-part test that a defendant must satisfy to establish that counsel's assistance was so ineffective as to require a reversal of a conviction. First, the defendant must establish that defense counsel's performance was deficient. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived defendant of a fair trial whose result was reliable. Id. at 2064.
 
 
 4
 Under the first prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.' Id. at 2065. The Supreme Court stated that although the proper measure of attorney performance remains simply reasonableness under prevailing professional norms, representation of a criminal defendant entails certain basic duties. The Court acknowledged that 'counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest.' Id. The Court went on, however, to say that: 'In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.' Id. When applying this first prong, Justice O'Connor emphasized that '[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . ..' Id. Consequently, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action 'might be considered sound trial strategy." Id. at 2065-66.
 
 
 5
 Under the second prong, 'the defendant must show that the deficient performance prejudiced the defense.' Id. at 2064. An error by defense counsel, even if professionally unreasonable, does not require setting aside a conviction if the error had no effect on the conviction. Id. at 2065. Ordinarily, 'the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' Id. at 2069. The Court, however, presumes prejudice in certain sixth amendment contexts. A conflict of interest claim warrants a limited presumption of prejudice. In discussing ineffectiveness claims arising from conflicts of interest the Court stated:
 
 
 6
 [The fairly rigid rule of presumed prejudice for conflicts of interest] is not quite [a] per se rule of prejudice . . .. Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affected his lawyer's performance.'
 
 
 7
 Id. at 2067 (citing Cuyler v. Sullivan, 446 U.S. 335, 350, 348 (1980)).
 
 
 8
 Cuyler v. Sullivan, supra, specifically raised a conflict of interest question. In that case, two privately retained lawyers represented respondent and two other defendants charged with the same murders. Respondent, who was charged first, did not object to the multiple representation. A jury convicted respondent after counsel rested his defense at the close of the prosecutor's case. The two other defendants were later acquitted at separate trials. Respondent contended that his lawyers' decision to rest his defense reflected a reluctance to expose witnesses, who would testify for the other defendants. The Supreme Court held that 'the possiblity of conflict is insufficient to impugn a criminal conviction' and vacated the Third Circuit's judgment granting habeas corpus relief. Id. at 350. Although the Court acknowledged that a possible conflict of interest inheres in almost every instance of multiple representation, the Court stated that to establish a sixth amendment violation 'a defendant who has raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.' Id. at 348. Accord O'Guin v. Foltz, 715 F.2d 397, 400 (6th Cir. 1983); United States v. Knight, 680 F.2d 470, 471 (6th Cir. 1982), cert. denied, 459 U.S. 1102 (1983).
 
 
 9
 Since appellant did not raise the possibility of a conflict of interest until after the jury had found him guilty, but before the District Court had sentenced him, appellant must demonstrate an actual conflict of interest. A mere showing of multiple representation does not satisfy appellant's burden. In the Sixth Circuit, a defendant must satisfy a two-part test to demonstrate that defense counsel's conflict of interest prevented the defendant from receiving the effective assistance of counsel. The defendant must show: (1) an actual conflict of interest and (2) that the conflict adversely affected defense counsel's performance. See Smith v. Bordenkircher, 671 F.2d 986 (6th Cir.), cert. denied, 459 U.S. 848 (1982).
 
 
 10
 Appellant argues that defense counsel had an actual conflict of interest. Appellant reasons: On one hand, defense counsel was attorney for appellant. On the other hand, defense counsel was also attorney for appellant's son, who allegedly would admit his involvement in the crimes and who was, allegedly, prepared to exonerate the appellant. Appellant's son, however, had testified before the grand jury, implicating not only himself but also appellant. If the son's testimony exonerated the appellant at trial, the United States could prosecute the son for perjury. Since defense counsel was attorney for the son, loyalty to the son's interests required that defense counsel not subject his client, the son, to perjury charges. Defense counsel, however, also had an obligation to vigorously defend the appellant. If the jury believed the son's trial testimony, that testimony would allegedly exonerate appellant. Appellant's attorney chose not to call the son as a witness.
 
 
 11
 Appellant's argument, however, overlooks several important considerations. Initially, appellant may have waived his right to raise the conflict of interest issue by acquiescing in the joint representation and failing to object to defense counsel's failure to call his son as a witness until after the jury convicted him. Appellant at least acquiesced in the original joint representation before the grand jury. After the son implicated appellant at the grand jury proceedings, appellant could have insisted on separate representation. After the son allegedly admitted his own guilt in the crimes and allegedly offered to exonerate appellant, appellant could have engaged separate counsel. At trial, appellant did not publicly object to his counsel's not calling his son as a witness until after the jury had convicted him. By apparently acquiescing in the joint representation and not objecting earlier, appellant may have waived his ineffectiveness of counsel claim.
 
 
 12
 Second, under the first prong of the Strickland test, appellant has not shown that, under all the circumstances, defense counsel's performance fell below an objective standard of reasonableness. At the hearing on defendant's motion, appellant's privately retained counsel, Clyde Pritchard told the court:
 
 
 13
 At the outset of this investigation I met with Mr. Grant and his son in which the focus of the investigation was on Mr. Grant and not the son. The son asked me would I represent him and I said well, I assume so until and unless there is an issue of conflict which arises.
 
 
 14
 At the time counsel agreed to represent the son, counsel indicated that he would represent both appellant and appellant's son until and unless a conflict of interest arose. Under the circumstances, counsel's actions were not unreasonable. At the start of the joint representation, only defendant was the target of the federal investigation. The grand jury was not investigating and, in fact, never indicted the son.
 
 
 15
 Under the circumstances at trial, counsel's actions were again not unreasonable. Defense counsel believed that there was no actual conflict of interest in this case. Although holding that a conflict of interest existed in the case, in Smith v. Anderson, 689 F.2d 59, 62 (6th Cir. 1982), this Court acknowledged that:
 
 
 16
 Due to the attorney-client privilege, counsel for the defendant is normally the individual best able to evaluate whether he may represent more than one defendant with his effectiveness unimpaired by the duality of his trial allegiance.
 
 
 17
 Pritchard's original joint representation of appellant and his son did not give rise to a conflict of interest at trial because any potential conflict of interest never ripened into an actual conflict of interest. Pritchard never had to choose between conflicting interests. At the hearing Pritchard stated:
 
 
 18
 I told Mr. Grant I did not want to put the son on the stand. I think that he would face perjury if he did, and I think that we at least had an argument of reasonable doubt, and if he took the stand, there was not going to be any doubt.
 
 
 19
 Consequently, at all times Pritchard had the best interests of appellant in mind. Pritchard did not call the son to the stand because Pritchard felt the son's testimony would only damage the appellant's case.
 
 
 20
 In Strickland, supra at 2065, Justice O'Connor warned that '[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction.' Accordingly, Justice O'Connor stated that '[j]udicial scrutiny of counsel's performance must be highly deferential.' Id. Appellant asserts his son's testimony would have exonerated him. His son, however, had already testified before the grand jury and implicated appellant. Pritchard's decision not to call the son as a witness qualifies as the exercise of reasonable professional judgment. Appellant is merely second-guessing defense counsel's professional judgment and defense strategy after a jury has convicted him. Even if appellant has not waived his right to challenge the counsel's performance, appellant has not shown that defense counsel's fell below an objective standard of reasonableness as required by Strickland.
 
 
 21
 Appellant cites Brien v. United States, 695 F.2d 10, 15 (1st Cir. 1982), as establishing two elements that a defendant must prove to establish an actual conflict of interest. First, a defendant must demonstrate that counsel could have pursued some plausible alternative defense strategy or tactic. Under this prong, the defendant 'need not show that the defense would necessarily have been successful if it had been used, but merely that it possessed sufficient substance to be a viable alternative.' Id. Second, the defendant must show that the alternative defense inherently conflicted with the attorney's other loyalties or interests. Id. In a footnote, the First Circuit found it irrelevant that the District Court stated that reasonable strategic reasons supported counsel's decision not to call a co-defendant, whom counsel's law firm was also representing, as a witness. Id. at 16 n.11. The court observed that a defendant does not have to show that the alternative he suggests would have been used but for the conflict, but merely that defense counsel's competing interest foreclosed plausible options. In Brien, however, the First Circuit did not find an actual conflict of interest in the failure to call the co-defendant as a witness because there was no showing how the witness's testimony would have helped the defendant. In this case, short of his conclusory allegations, appellant has not demonstrated how his son's testimony would have exonerated him. Appellant did not make an offer of proof to show what his son would have testified by affidavit or otherwise. Consequently, Brien does not support appellant's position.
 
 
 22
 Even assuming that an actual conflict of interest existed, the second prong of the test requires that appellant show that the conflict of interest adversely affected defense counsel's performance. '[The fairly rigid rule of presumed prejudice for conflicts of interest] is not quite [a] per se rule of prejudice.' Strickland, supra at 2067. We conclude that the jury would have convicted appellant even if his son had testified. Appellant's son had already implicated the appellant before the grand jury. Even if his son's new testimony would have exonerated appellant, the son would have still have had to survive cross-examination. Furthermore, the son's testimony would have had to overcome the other substantial evidence pointing to appellant's guilt. Appellant has not demonstrated that the conflict of interest, if any, adversely affected defense counsel's performance.
 
 
 23
 Accordingly, appellant's convictions are affirmed.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Title 18 U.S.C. Sec. 152 provides in pertinent part:
 Whoever knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or from creditors in any case under title 11, any property belonging to the estate of a debtor;
 * * *
 Shall be fined not more than $5,000 or imprisoned not more than five years, or both.
 
 
 [2]
 Title 26 U.S.C. Sec. 7212(b) provides:
 Any person who forcibly rescues or causes to be rescued any property after it shall have been seized under this title, or shall attempt or endeavor so to do, shall, excepting in cases otherwise provided for, for every such offense, be fined not more than $500, or not more than double the value of the property so rescued, whichever is the greater, or be imprisoned not more than two years.