Earl **PERSON**

v.

**UNITED STATES of America.**

**C.A. No. 97–258ML.**

United States District Court,
D. Rhode Island.

Nov. 12, 1998.

---

Earl Person, pro se.

Kenneth P. Madden, Assistant United States Attorney, Providence, RI, for Defendant.

### MEMORANDUM AND ORDER

LISI, District Judge.

This matter is before the court on the *pro se* petitioner's motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. This matter was initially referred to United States Magistrate Judge Jacob Hagopian for his preliminary review, findings, and recommended disposition. *See* 28 U.S.C. § 636(b)(1); *see also* D.R.I. Loc. R. 32(c). Magistrate Judge Hagopian recommended the dismissal of the motion as untimely, to which Person filed an objection. Because the court declines to adopt the Magistrate Judge's Report and Recommendation, the merits of the petitioner's claim will be addressed.

### I. BACKGROUND

On May 3, 1991, a confidential informant introduced an undercover Bureau of Alcohol, Tobacco & Firearms Special Agent, Matthew Horace, to the petitioner, Earl Person (Person). At that meeting, and through several subsequent telephone conversations that took place between May 8 and May 28, Agent Horace and Person negotiated a cocaine sale. On May 29, 1991, Person sold 24.8 grams of 83 percent pure cocaine to Agent Horace for $850.00.

Between May 31 and June 19, Agent Horace had several telephone conversations with Brenda Person (Brenda), the petitioner's wife, concerning the sale of cocaine. Even though Person was involved in one of those conversations during which the sale of cocaine was discussed,[1] Brenda told Agent Horace that she would be handling future transactions with him. On June 19, 1991, Agent Horace went to the Persons' home, where Brenda sold him 26.6 grams of 80 percent pure cocaine for $850.00.

The Persons were arrested on November 19, 1991, and indicted for drug trafficking. Both defendants were charged with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (Count I). Person was charged with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts II & III). Brenda was charged with distribution of cocaine in Count III. Brenda pleaded guilty to Counts I and III, while Person proceeded to trial.

Person was represented at trial by a court-appointed attorney, Thomas Grasso. At the start of his trial, Person requested a new attorney. He alleged a conflict between himself and Grasso because Grasso did not file any pretrial motions and because he did not investigate any defense to present at trial. He also alleged that Grasso had decided not to present an adequate defense. As evidence of this, in the instant motion, Person points to an affidavit from Brenda dated November 18, 1992, and a letter from Grasso dated March 27, 1992. In his letter, Grasso urged Person to plead guilty in light of the over-

---

1. Earl Person participated in a three-way telephone conversation with Brenda and Agent Horace. At the time, Person was speaking from a telephone at the Adult Correctional Institution (ACI), where he was being detained without bail as a possible probation violator.

whelming evidence against him. In Brenda's affidavit, she alleges that Grasso stated that he no longer wished to represent Person and that Person should hire new counsel. She further alleges that Grasso said that if he did not want to defend Person, he was "not going to do a good job." The court denied Person's request, holding that Grasso was a competent attorney and that the conflict between Grasso and Person should not affect Grasso's performance in the case.

On April 3, 1992, a jury convicted the petitioner on all three counts. Person retained private counsel, James A. Ruggiero, for sentencing and on appeal. On August 7, 1992, Person was sentenced to 262 months imprisonment.

On appeal, Person challenged the trial court's denial of his day-of-trial request to change attorneys and the court's failure to depart downward from the career offender sentencing guideline range. The First Circuit denied Person's appeal in an unpublished decision. *See United States v. Person*, No. 92–1982 (1st Cir. June 8, 1993) (per curiam). The petitioner did not seek *certiorari* from the United States Supreme Court. While Person's appeal was still pending in the First Circuit, he also filed a "Motion to Reduce Sentence," which was denied by this court on January 13, 1993.

Person filed the instant motion as a *pro se* petitioner pursuant to 28 U.S.C. § 2255 on April 23, 1997, more than three years after the denial of his appeal. Person alleges that his institutional transfers contributed to the delayed filing of this matter. In his motion and supporting memorandum, Person demands a hearing on the following allegations: (1) that counsel rendered ineffective assistance at trial; (2) that counsel rendered inef-

fective assistance at sentencing; and (3) that his sentence should be reduced as a result of an amendment to the United States Sentencing Guidelines.

Person's § 2255 motion was referred to United States Magistrate Judge Hagopian, who recommended dismissal of the motion as untimely. *See Person v. United States*, 1998 WL 226235 (D.R.I. Apr.21, 1998). Person timely objected to the report and recommendation. Pursuant to Fed.R.Civ.P. 72(b), this court has conducted a de novo review of the pleadings. For the reasons stated below, the court declines to adopt the recommendation for dismissal based on petitioner's tardiness in filing his petition. Instead, the court considers petitioner's motion on the merits and grants the government's motion to dismiss for the reasons stated below.

## II. DISCUSSION

### A. The Timeliness Issue

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA), which introduced, for the first time,[2] a statute of limitations for the filing of petitions for writs of habeas corpus and motions to vacate federal sentences. *See Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir.1998). Under the AEDPA, a prisoner who wishes to challenge his sentence pursuant to 28 U.S.C. §§ 2254 or 2255, must do so within a year from the date of his conviction.[3] Before reaching the merits of the instant case, this court must decide whether petitioner, whose conviction became final prior to AEDPA's effective date, should be allowed a grace period after the effective date within which to file his motion pursuant to 28 U.S.C. § 2255. For the following reasons, this court

---

2. Prior to this enactment, a prisoner could file a petition pursuant to § 2255 any time after he had exhausted his appellate remedies. A petition could only be dismissed if the ground for the petition could have been known to the petitioner earlier, and if the government could show that the petitioner's "delay 'prejudiced [it] in its ability to respond to the petition.' " *Artuz*, 150 F.3d at 99 (quoting Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts).

3. Under § 2255, a prisoner has one year from the latest of (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed; (3) in the case of a newly recognized right made retroactively applicable, the date on which the right asserted was originally recognized; or (4) the date on which the facts supporting the claim(s) presented could have been discovered through due diligence. *See* 28 U.S.C. § 2255.

concludes that prisoners whose convictions became final prior to the effective date of AEDPA should be given a one-year grace period within which to file a motion pursuant to 28 U.S.C. § 2255.

 The AEDPA is silent as to whether a grace period should be granted to those prisoners whose convictions became final prior to its effective date. *See* 28 U.S.C. § 2255. Although the First Circuit has not yet ruled on this issue, every circuit court that has considered it has granted a one-year grace period within which to bring habeas claims. *See, e.g., Ross v. Artuz,* 150 F.3d 97, 100–01 (2d Cir.1998); *Burns v. Morton,* 134 F.3d 109, 111 (3d Cir.1998); *Brown v. Angelone,* 150 F.3d 370, 375 (4th Cir.1998); *United States v. Flores,* 135 F.3d 1000, 1006 (5th Cir.1998); *Lindh v. Murphy,* 96 F.3d 856, 866 (7th Cir.1996) (en banc) (rev'd on other grounds) 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Calderon v. United States Dist. Court for the Central Dist. of California,* 128 F.3d 1283, 1287 (9th Cir.1997) *cert. denied,* —— U.S. ——, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998); *United States v. Simmonds,* 111 F.3d 737, 746 (10th Cir.1997). A statute of limitations must be applied in such a manner that it provides a party a full opportunity to try his or her rights in court. *See Artuz,* 150 F.3d at 100; *Flores,* 135 F.3d at 1004. In applying a new statute of limitations, a court must ensure that a party has notice of the new limitation and a reasonable time within which to commence suits on already existing causes of action, especially when the underlying claims allege constitutional defects or violations of federal law as do § 2255 motions. *See Artuz,* 150 F.3d at 100; *Simmonds,* 111 F.3d at 745. The majority of courts have concluded that the application of a new limitation period without a grace period to prisoners whose convictions became final prior to AEDPA's effective date would be impermissibly retroactive in that it would wholly eliminate claims for remedial actions that would have been considered timely under the old law. *See, e.g., Brown v. Angelone,* 150 F.3d 370, 372 (4th Cir.1998); *Flores,* 135 F.3d at 1004; *O'Connor,* 133 F.3d at 550; *Simmonds,* 111 F.3d at 745.

In the instant matter, Person argues that his petition was filed within a reasonable time and should not be dismissed as untimely. Person was transferred three separate times during his term of federal imprisonment. He alleges that these transfers prevented him from presenting his claims in a more expedient manner.

In accord with the other circuits that have decided this issue, this court concludes that prisoners whose convictions became final prior to the effective date of the AEDPA had until April 23, 1997 to file a motion pursuant to § 2255. A bright-line one-year grace period ensures that prisoners are given notice of the new limitations period and a reasonable time in which to file a petition. *See Artuz,* 150 F.3d at 102–03. Since Person filed his motion on April 23, 1997, his motion is deemed to be timely. This court will now address the merits of his claims.

### B. 28 U.S.C. § 2255

 28 U.S.C. § 2255 provides a remedy for prisoners in custody pursuant to the judgment of a federal court. 28 U.S.C. § 2255 provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (West 1997). To bring a § 2255 motion, a prisoner must allege a "fundamental defect which inherently results in a complete miscarriage of justice ... [or] ... an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). A prisoner cannot use a § 2255 motion to review decisions settled during a prior appeal, *see United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Dirring v. United States,* 370 F.2d 862, 864 (1st Cir.1967), and

he cannot raise issues in his petition that he could have raised during trial or on direct appeal. *See Knight v. United States*, 37 F.3d 769, 773–74 (1st Cir.1994).

Section 2255 provides that a court should hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U .S.C. § 2255 (West 1997). A hearing is unnecessary " 'when a § 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case.' " *United States v. McGill*, 11 F.3d 223, 225–6 (1st Cir.1993) (quoting *Moran v. Hogan*, 494 F.2d 1220, 1222 (1st Cir.1974)). The petitioner bears the burden of establishing the need for an evidentiary hearing. *Id.* at 225. In considering a motion under § 2255, the court should accept the movant's allegations as true, except to the extent that they are contradicted by the record. *See id.* at 225; *United States v. Mosquera*, 845 F.2d 1122, 1124 (1st Cir.1988). Having reviewed the pleadings in this case, the court has determined that no hearing is necessary.

C. Standard of Review

At the outset, it is incumbent upon this court to determine the correct standard of review. The standard of review of a § 2255 motion for alleged trial errors to which no contemporaneous objection was made is the "cause and actual prejudice" standard. *See Frady*, 456 U.S. at 167–68, 102 S.Ct. 1584. A non-constitutional claim that could have been raised on direct appeal but was not, cannot be asserted in a § 2255 motion unless the petitioner can show cause for the failure to raise the claim and that he was actually prejudiced by the errors of which he complains. *See id.; Smullen v. United States*, 94 F.3d 20, 23 (1st Cir.1996). The cause and prejudice standard need not be applied to ineffective assistance of counsel claims, *see Smullen*, 94 F.3d at 23; *Knight*, 37 F.3d at 774, unless those claims could reasonably have been raised on direct appeal and were not. *See Brien v. United States*, 695 F.2d 10, 14 n. 6 (1st Cir.1982) (citing

*United States v. Franzen*, 687 F.2d 944, 950 (7th Cir.1982)).

Generally, ineffective assistance of counsel claims are more appropriately heard in a collateral proceeding because, very often, a prisoner is represented by the same attorney throughout the appeals process, making it impossible to investigate and raise an ineffective assistance of counsel claim on appeal. *See Brien*, 695 F.2d at 13; *Knight*, 37 F.3d at 774. However, " 'where the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim, an appellate court may ... determine the merits of such a contention on direct appeal.' " *United States v. Ortiz*, 146 F.3d 25, 27 (1st Cir.1998) (quoting *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir.1991)); *see Brien*, 695 F.2d at 13 & 14 n. 6.

D. Ineffective Assistance of Counsel

In the instant case, the petitioner alleges ineffective assistance of counsel claims against (1) the attorney who represented him at trial, and (2) the attorney who represented him during sentencing. At trial, Person was represented by a court-appointed attorney, Thomas Grasso. After his conviction, Person retained private counsel, James A. Ruggiero, who represented him during sentencing and on appeal.

Person alleges that his court-appointed trial attorney was ineffective because he did not file any pretrial motions and because he did not investigate any defense to present at trial. As evidence of his claim, Person points to an affidavit from Brenda Person dated November 18, 1992, and a letter from Grasso dated March 27, 1992. In his letter, Grasso urged Person to plead guilty in light of the overwhelming evidence against him. In her affidavit, Brenda alleges that Grasso stated that he no longer wished to represent Person and that Person should hire new counsel. She further alleges that Grasso said that if he did not want to defend Person, he was "not going to do a good job."

Person's claim against his trial attorney falls under the exception set forth in *Brien* and must be reviewed under the cause

and prejudice standard. *Cf.* 695 F.2d at 14 n. 6 (citing *Franzen,* 687 F.2d at 950). The record facts indicate that Person could have raised this claim on direct appeal. First, he was represented by a different attorney on appeal and was no longer dependent upon Grasso for advice. Second, by the time his trial began on April 2, 1992, Person had already made complaints against his trial attorney. Before his trial even began, Person was aware of Grasso's alleged "inadequacies" and comments. In fact, Person had expressed these concerns to the court the day his trial was to begin and, prior to that, had requested new counsel. Person challenged the court's denial of his request for a new attorney, but did not raise the claim of ineffective assistance. Person has not shown cause why he did not raise this issue on appeal. He merely states that he thought he was supposed to raise it in a collateral attack. This misinformed legal presumption does not save Person's claim. Therefore, this ground must be denied.

██ Person also alleges that his counsel at sentencing, James A. Ruggiero, was ineffective for two reasons: (1) he did not contest an enhancement for "role in the offense" and (2) he did not assert the defense of sentencing entrapment. Attorney Ruggiero represented Person during his sentencing and on appeal. Because he was represented by the same attorney during these two stages of litigation, Person was unable to investigate or raise his ineffective assistance of counsel claim on direct appeal. As such, this claim is not subject to the cause and prejudice standard of review. Person properly raises this claim now in his collateral attack.

██ To establish a violation of the Sixth Amendment right to the effective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Matthews v. Rakiey,* 54 F.3d 908, 916 (1st Cir.1995). The essence of an ineffective assistance of counsel claim is that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (citing *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052; *United States v. Cronic,* 466 U.S. 648, 655–57, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)).

██ In asserting an ineffective assistance of counsel claim, the defendant "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman,* 477 U.S. at 381, 106 S.Ct. 2574; *see also Matthews,* 54 F.3d at 916 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). The defendant must show that, "but for counsel's errors, 'there is a reasonable probability ... that the result of the proceeding would have been different.'" *Matthews,* 54 F.3d at 916 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). "There is a strong presumption that counsel's conduct falls within the 'wide range of reasonable professional assistance,'" *Kimmelman,* 477 U.S. at 374, 106 S.Ct. 2574 (quoting *Strickland,* 466 U.S. at 669, 104 S.Ct. 2052), and a reviewing court will be highly deferential, evaluating the reasonableness of counsel's performance from counsel's perspective at the time of the alleged error. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *see also Matthews,* 54 F.3d at 916. The defendant is entitled to an effective defense, not a perfect one nor even a successful one. *See Scarpa v. DuBois,* 38 F.3d 1, 8 (1st Cir.1994).

██ Person's first claim against Ruggiero, that he did not contest an enhancement for Person's role in the offense, can be quickly disposed of. Person contends that he did not have the degree of control and authority over the drug dealing enterprise necessary to enhance his sentence under U.S.S.G. § 3B1.1 because his wife was also involved in the cocaine sales. However, Ruggiero did present this argument to the court at sentencing. The court rejected counsel's argument, finding the fact that the petitioner negotiated a cocaine sale while being detained in the ACI particularly significant in determining the petitioner's role in the offense. *See* Transcript

of Proceedings on August 7, 1992, 15. Although the court did make such a finding, Person's role in the offense did not ultimately impact upon his sentence. Person was sentenced as a Career Offender under U.S.S.G. § 4B1.1. Because he was sentenced as a Career Offender, any enhancement for role did not affect the guideline range under which he was ultimately sentenced. *See* U.S .S.G. § 4B1.1. Indeed, Person was sentenced to the minimum sentence authorized under the Career Offender guideline range. Therefore, this claim has no merit.

■ Person's second claim against Attorney Ruggiero is that he was ineffective because he did not argue sentencing entrapment. Person contends that he should have been arrested after the first sale of cocaine, but that the Government continued its investigation in order to obtain a higher sentence.

■ "Sentencing factor manipulation" is ordinarily a fact bound determination subject to clear-error review. *See United States v. Gibbens,* 25 F.3d 28, 30 (1st Cir.1994). The defendant bears the burden of showing sentencing factor manipulation. *See id.* at 31. A finding of sentencing factor manipulation authorizes a sentencing court to depart from the guideline sentencing range, as well as from statutory minimums. *See United States v. Montoya,* 62 F.3d 1, 3 (1st Cir. 1995).

■ To prevail in a sentencing factor manipulation claim, a defendant must show undue manipulation by government agents. *See Montoya,* 62 F.3d at 3–4. That is, the defendant must show that the government engaged in "sufficiently egregious" misconduct thereby overbearing the will of the defendant and luring him into committing a crime more serious than that he was already predisposed to committing. *See United States v. Connell,* 960 F.2d 191, 196–97 (1st Cir.1992). While the danger of sentencing manipulation seems great in cases "where the accused's sentence depends in large part on the quantity of drugs or money involved," courts are aware that "sting operations are designed to tempt the criminally inclined," and that, therefore, they "should go very slowly before staking out rules that will deter government agents from the proper perfor-

mance of their investigative duties." *Id.* at 196.

Attorney Ruggiero's failure to argue sentencing manipulation did not render his assistance ineffective. First, the likelihood that this claim would have been successful is speculative at best. Person has provided no evidence of "sufficiently egregious" misconduct on the part of the government beyond his bare assertion that Agent Horace "continued to buy until he got more than 50 grams of cocaine." Second, any quantity of cocaine less than 500 grams would have had absolutely no effect on Person's offense level as a Career Offender. Due to his prior felony convictions for possession of cocaine, Person was subject to a guidelines offense level of 34, regardless of whether he sold Agent Horace 1 gram of cocaine or 499 grams of cocaine. Finally, Person's assertion that he might not have been prosecuted by federal authorities and thus subject to a federal conviction if he had been arrested after the first sale is purely speculative. Even a single sale of cocaine is a violation of Federal law. His argument on this point is wholly without merit. Therefore, this court finds that Person has not shown that he was prejudiced by Attorney Ruggiero's failure to argue sentencing manipulation.

### E. The Guidelines Amendment

■ Person also argues that his sentence should be vacated because this court sentenced him under a guideline which was subsequently amended by the Sentencing Commission and made retroactive.

Person was indicted for violations of 21 U.S.C. § 841(a)(1) and (b)(1)(c). The statutory maximum term of imprisonment for these violations was 20 years. Because Person had two prior felony drug convictions, his statutory maximum was enhanced to 30 years imprisonment.

The court determined that Person was a Career Offender pursuant to U.S.S.G. § 4B1.1, which provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled

substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. Under that provision, the offense level of a Career Offender is determined by the offense statutory maximum. In the 1992 version of the Sentencing Guidelines, "Offense Statutory Maximum" was defined as "maximum term of imprisonment authorized for the offense of conviction." U.S.S.G.App. C, amend. 267 (Nov.1989) (adding § 4B1.1, comment, n. 2), *quoted in United States v. LaBonte,* 520 U.S. 751, ——, 117 S.Ct. 1673, 1675, 137 L.Ed.2d 1001 (1997). Person's offense statutory maximum was 30 years, making his offense level a 34, and subjecting him to 262–327 months in prison. Person was sentenced accordingly.

On November 1, 1994, Sentencing Guidelines Amendment number 506 took effect. In this amendment, the Sentencing Commission redefined "Offense Statutory Maximum" as "the maximum term of imprisonment authorized for the offense of conviction . . . *not including* any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record." U.S.S.G.App. C, amend. 506 (Nov.1994) (amending U.S.S.G. § 4B1.1, comment, n. 2), *quoted in LaBonte,* 117 S.Ct at 1676 (emphasis added). Therefore, under this amendment, Person's offense statutory maximum would have been 20 years, the statutory maximum term of imprisonment for the crimes for which he was convicted. His offense level would have been a 32, not a 34, and his sentencing range would have been 210–262 months. Sentencing Guideline Amendment number 506 was given retroactive application. *See* Sentencing Guideline Amendment number 504.

Amendment 506 was invalidated by the United States Supreme Court one month after Person filed his § 2255 motion. In *LaBonte,* the Court held that the Amendment was invalid because it was inconsistent with the plain language of 28 U.S.C. § 994(h), which directs the sentencing commission to specify a sentence at or near the maximum term allowed. *See* 117 S.Ct. at 1679. Prior to the United States Supreme Court's invalidation of the amendment, several other courts also held that the amendment

was invalid, asserting the same reasoning advanced by the United States Supreme Court in *LaBonte.* *See* 117 S.Ct. at 1676 n. 6 (citing illustrative cases); *see, e.g., United States v. Novey,* 78 F.3d 1483 (10th Cir.1996); *United States v. Washington,* 933 F.Supp. 1003 (D.D.C.1996); *United States v. Benson,* 917 F.Supp. 543 (W.D.Tenn.1995). The "Offense Statutory Maximum" has since been redefined as "the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, *including* any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record." *See* U.S.S.G. § 4B1.1, Application Note 2 (1997) (emphasis added).

### III. CONCLUSION

For the reasons stated herein, the motion for relief pursuant to 28 U.S.C. § 2255 is denied.

SO ORDERED.