USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 92-1141 UNITED STATES, Appellee, v. JOSE R. HERNANDEZ-LEBRON, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Harry R. Segarra for appellant. ________________ Ernesto Hernandez-Milan, Assistant United States Attorney, with _______________________ whom Guillermo Gil, United States Attorney, and Jose A. Quiles- ______________ ________________ Espinosa, Senior Litigation Counsel, were on brief for appellee. ________ ____________________ May 18, 1994 ____________________ BOWNES, Senior Circuit Judge. Defendant-appellant, BOWNES, Senior Circuit Judge. ____________________ Jose Hernandez-Lebron, pleaded guilty to drug possession and drug importation charges after he and Milagros Perez Delgado (Perez) were indicted for conspiracy and drug offenses. At all relevant times, a single attorney represented defendant and Perez. Defendant argues that the joint representation deprived him of the effective assistance of counsel, and he seeks to withdraw his plea. Finding nothing in the record to show that a conflict of interests impaired counsel's performance, we deny defendant the relief he seeks. I. I. BACKGROUND BACKGROUND __________ From March 1990 to June 1990, Jeanette Diaz-Laurano (Diaz), Edgardo Lopez-Rodriguez, and Roberto Matos imported cocaine into the United States from the Netherlands Antilles. According to the presentence report, defendant made the necessary arrangements, paid for travel expenses, and paid the couriers $1000 per kilogram of cocaine. Defendant and Perez, his common-law wife, accompanied Diaz on two trips. In May 1991, a grand jury returned a five-count indictment against defendant and Perez for conspiring to import, importing, and possessing cocaine with intent to distribute. 21 U.S.C. 841(a)(1), 952(a), 960, 963. Defendant and Perez retained Attorney Edwin Quinones to represent them. -2- 2 In June 1991, Perez moved to have her trial severed from defendant's. The assigned trial judge granted a severance on September 24, 1991 and scheduled defendant's trial for October 11, several weeks before Perez's. Meanwhile, the government filed motions for reconsideration of the severance, and for a hearing, under Fed. R. Crim. P. 44(c), on the question of whether joint representation would "jeopardize both defendants['] rights, particularly Milagros Perez-Delgado['s]," Government's Mot. _________________ for Rule 44(c) H'g, at 2. On October 7, 1991, another judge, __________________ to whom the litigation had been reassigned, vacated the severance, set a joint trial for October 11, and denied the request for a hearing into the question of a conflict of interests because a magistrate judge had previously held such a hearing. On the morning of October 11, Perez pleaded guilty to one count of importing cocaine, and the remaining counts were dismissed as to her. Defendant followed suit several hours later by pleading to two counts of cocaine importation and possession, on the condition that the remaining counts be dismissed. Quinones represented both defendant and Perez through their plea negotiations, change of plea hearings, and defendant's sentencing proceeding. Prior to the date of her sentencing proceeding, which followed defendant's, Perez filed a motion for the -3- 3 appointment of separate counsel. The trial court granted the motion because it found that a conflict of interests jeopardized her right to effective assistance of counsel. Perez is not a party to this appeal. II. II. Defendant's contentions on appeal are: that he was never adequately informed of the risks of joint representation; that the trial judge had a duty to inquire into potential conflicts when the severance was vacated; and that his lawyer's divided loyalties violated his Sixth Amendment right to the effective assistance of counsel. Defendant seeks to withdraw his plea for those reasons.1 The government responds that the magistrate judge presiding over defendant's arraignment adequately warned him of the risks of joint representation, and that no actual conflict developed. Conflicts of Interests and Sixth Amendment Principles Conflicts of Interests and Sixth Amendment Principles _____________________________________________________ A defendant has a right to conflict-free representation under the Sixth Amendment. Wood v. Georgia, ____ _______ 450 U.S. 261, 271 (1981); Holloway v. Arkansas, 435 U.S. 475, ________ ________ ____________________ 1. Defendant also raises a sentencing issue, to which we devote nothing more than this footnote. In a single two-line sentence in his brief, defendant argues that the trial court erred in basing his sentence on sixteen kilograms of cocaine rather than fourteen kilograms. The record indicates that defense counsel explicitly conceded at sentencing that sixteen kilograms were involved in the offense, and there is ample support for the trial court's calculations. -4- 4 489-90 (1978). When two or more defendants share the same counsel, conflicts of interests might arise. "[T]he conflict is within the attorney's loyalty; the problem is that the attorney might not be able to represent one client fully without damaging the interests of the other client." United ______ States ex rel. Tonaldi v. Elrod, 716 F.2d 431, 437 (7th Cir. ______________________ _____ 1983). Although "in some cases multiple defendants can appropriately be represented by one attorney," Holloway, 435 ________ U.S. at 482, joint representation violates the Sixth Amendment when it gives rise to a conflict of interests adversely affecting the lawyer's performance. Cuyler v. ______ Sullivan, 446 U.S. 335, 348 (1980); United States v. ________ ______________ Mazzaferro, 865 F.2d 450, 455 (1st Cir. 1989). Prejudice in __________ such cases is presumed. Mazzaferro, 865 F.2d at 455; Brien __________ _____ v. United States, 695 F.2d 10, 15 (1st Cir. 1982). _____________ Conflicts may arise at any stage of a proceeding because codefendants are rarely, if ever, identically- situated. The joint attorney may have to prefer one defendant over the other at trial, where, for example, evidence favorable to one defendant harms another; during plea negotiations, where advocacy for one defendant undermines the position of others, or when a plea bargaining offer is conditioned on one defendant testifying against another; and at sentencing, where sentencing factors compel a lawyer to distinguish between clients. See United States v. ___ _____________ -5- 5 Curcio, 680 F.2d 881, 887 (2d Cir. 1982) (providing myriad ______ examples of conflicts); Fed. R. Crim. P. 44(c) advisory committee's notes; ABA Standards for Criminal Justice, The Defense Function 4-3.5 (2d ed. 1980). "It has long been recognized that there are inherent difficulties" in reviewing claims of conflicts of interests. Mazzaferro, 865 F.2d at 456 (citing Holloway, 435 __________ ________ U.S. at 490). These difficulties arise because "in a case of joint representation of conflicting interests the evil . . . is in what the advocate finds himself compelled to refrain _______ from doing . . . ." Holloway, 435 U.S. at 490 (emphasis in ________ original). It is often unclear "that the conflict of interests, and not pure trial strategy," is the reason "for the tactics adopted--or forgone--at trial." Curcio, 680 F.2d ______ at 887. Trial Court's Duty of Inquiry Trial Court's Duty of Inquiry _____________________________ So "ubiquitous and insidious" are the risks of multiple representation, Curcio, 680 F.2d at 887, and so ______ fundamental is the right to counsel, that the Sixth Amendment imposes duties on trial courts in certain cases. Cuyler, 446 ______ U.S. at 346. Defendant's timely objections to joint representation must be investigated, and inquiries must be made into the propriety of multiple representation whenever the trial court knows or reasonably should know that a particular conflict exists. Cuyler, 446 U.S. at 346-47. ______ -6- 6 Federal Rule of Criminal Procedure 44(c) expands these duties by requiring an inquiry into the possibility of a conflict in all cases where jointly-charged defendants retain the same counsel. Under Rule 44(c), the trial court must "inquire with respect to such joint representation and . . . personally advise each defendant of the right to the effective assistance of counsel, including separate representation." Id. Moreover, "[u]nless it appears that ___ there is good cause to believe no conflict of interest is likely to arise," Rule 44(c) requires the court to "take such measures as may be appropriate to protect each defendant's right to counsel." Id. __ Rule 44(c) has an antecedent in this Circuit, United States v. Foster, 469 F.2d 1 (1st Cir. 1972). In _____________ ______ Foster, we exercised our supervisory powers in cases ______ involving jointly-represented defendants: [I]t shall be the duty of the trial court, as early in the litigation as practicable, to comment on some of the risks confronted where defendants are jointly represented to insure that defendants are aware of such risks, and to inquire diligently whether they have discussed the risks with their attorney, and whether they understand that they may retain separate counsel appointed by the court and paid for by the government. Id. at 5. The warning and the inquiry must be on the record. ___ Id.; accord Fed. R. Crim. P. 44(c) advisory committee's ___ ______ notes. We require a Foster inquiry to ensure that defendants ______ -7- 7 have been properly warned and to "prevent the uncertainty that arises when defendants make post-conviction claims of ignorance or misadvice." United States v. Martorano, 620 ______________ _________ F.2d 912, 915 n.3 (1st Cir.), cert. denied, 449 U.S. 952 _____ ______ (1980); see also Colon v. Fogg, 603 F.2d 403, 407 (2d Cir. ___ ____ _____ ____ 1979) ("Such an inquiry is usually the only practical method of ascertaining whether the joint representation may prejudice the defendant . . . ."). Where there is no record of a satisfactory inquiry, the government bears the burden of proving that prejudice to the defendant was improbable. Mazzaferro, 865 F.2d at 454. __________ The magistrate judge at the arraignment of defendant and Perez engaged in the following dialogue regarding the risks of joint representation: [Magistrate:] [W]hen one attorney represent two or more Defendants in this same case, there is always a possibility of conflict of interest. The Court of Appeals for the First Circuit has established in the case of United States vs. Foster that when such _________________________ possibility exists the Court must discuss some of the risks confronted when two or more Defendants are jointly represented to ensure that the Defendants are aware of such risks and to ask whether they have discussed the risk with their attorney and whether they understand that they may retain separate counsels. If Defendant is financially unable to pay for such services a counsel will be appointed and paid by the Government. Now, I must appraise [sic] you that it may be possible that during the course of this action that with respect of particular defenses and decisions, such -8- 8 as whether or not to take the stand or to call particular witnesses or how to conduct a cross examination what may be in one's best interest will turn out not to be in the best interest of the other. It is imperative that you, as the Defendants, understand the importance of my advice concerning the conflict of interest. Defendant, do you understand the problem? [Defendant:] Yes. . . . [Magistrate:] Have you been able to discuss the problem with your counsel? [Defendant:] Yes. . . . [Magistrate:] Do you still wish to proceed with the same counsel as you're co-Defendants? [Defendant:] At this time, yes. . . . [Magistrate:] Well, if at any time any one of you understand that a possible conflict of interest is present let the Court know of it so necessary steps will be taken to protect your Constitutional Rights and to be represented by a competent counsel. Is that clear? [Defendant:] Yes. . . . While the government argues that the magistrate's inquiry was adequate, defendant takes the opposite view on the ground that the magistrate did not "fully advise" defendant of the risks and did not elicit a narrative response. Defendant has failed to identify any element essential to a Foster hearing that the magistrate's inquiry ______ lacked. We do not require that defendants make narrative responses, or that defendants be warned of every conceivable risk. See Foster, 469 F.2d at 5 (form of hearing is ___ ______ -9- 9 generally within the trial court's discretion). Those are requirements we might impose if a Foster inquiry were a ______ prelude to a waiver of the right to conflict-free representation. But it is not. A defendant can successfully challenge his conviction on the ground that a conflict impaired his lawyer's performance, even if an adequate Foster ______ inquiry occurred. See Mazzaferro, 865 F.2d at 455; Foster, ___ __________ ______ 469 F.2d at 5. We have required that courts explain and explore the risks of joint representation, in lay persons' terms, to enable defendants to appreciate how conflicts might impair the lawyer's performance. United States v. Elkins, 774 F.2d ______________ ______ 530, 541 (1st Cir. 1985); United States v. Waldman, 579 F.2d _____________ _______ 649, 653 (1st Cir. 1978); United States v. Donahue, 560 F.2d _____________ _______ 1039, 1043-44 (1st Cir. 1977). The magistrate in this case personally addressed defendant regarding the possibility of a conflict, stated that he had a right to separate counsel, provided examples of conflicts that might arise at trial, and elicited an unequivocal "Yes," in response to a question on whether defendant had discussed "the problem" with counsel.2 Defendant argues that his mental health problems, illiteracy, and lack of a formal education rendered the inquiry ____________________ 2. The magistrate also obtained defendant's signature on a form entitled, "Acknowledgment of Joint Representation Admonishment," which essentially repeated what the magistrate stated in open court. -10- 10 inadequate. The record does not suggest, however, that defendant was incompetent, or that he could not comprehend the magistrate's explanation. On the contrary, defendant acknowledged that he understood. Moreover, defendant's qualified response as to whether he desired to continue to be represented by Quinones--"At this time, yes."-- suggested that his answers were not merely rote. While the inquiry might not have been exemplary, it was adequate to ensure defendant understood the risks. Next, defendant argues that the trial court had a duty to inquire into the possibility of a conflict of interests later in the proceeding, when it vacated the severance. According to defendant, the trial court's decision placed defense counsel in the position of perhaps favoring one client over the other at trial, and that the court's failure to provide a Foster hearing at that time was ______ improper.3 We agree with defendant that the trial court had a duty to investigate the possibility of a conflict when it vacated the severance. Under Rule 44(c), the trial court's duty to inquire into the possibility of a conflict of ____________________ 3. The government, not defense counsel, requested a second Foster hearing when it moved for reconsideration of the ______ severance order. The trial judge denied the government's motion, shortly after vacating the severance, when defense counsel confirmed that the magistrate previously held a Foster hearing. ______ -11- 11 interest is "a continuing one." Fed. R. Crim. P. 44(c) advisory committee's notes. That duty may entail reinitiating an inquiry when there are "new developments" suggesting a potential conflict. Id. ___ In this case, defense counsel was preparing for separate trials until the severance was vacated, only one week before trial. The order vacating the severance heightened the risk that a conflict might infect certain of defense counsel's strategic decisions. See, e.g., Curcio, ___ ____ ______ 680 F.2d at 887 (discussing dilemmas confronting trial counsel for multiple defendants, including "whether to have one defendant testify while the other remains silent"); cf. ___ Cuyler, 446 U.S. at 347 (provision of separate trials ______ significantly reduced the potential for a divergence in interests). Given that heightened risk, the court had a duty to inquire whether a conflict would develop at trial. Contrary to defendant's argument on appeal, however, we find that the trial court did not shirk that duty. Prior to vacating the severance, the court investigated whether the defense strategies of Perez and defendant would diverge. Defendant's affidavit supporting the request for separate trials stated that, if the trials were severed, he would testify at Perez's trial that he had had an affair with Jeanette Diaz (the government's key witness), and that she was falsely incriminating both -12- 12 defendant and Perez--his common-law wife--because defendant "did not please [Diaz]." The court concluded from that affidavit and from inquiries he made of defense counsel at the hearing on the motion for reconsideration that the codefendants' strategies were harmonious. Defendant has identified no other developments in his case occurring prior to the order vacating the severance that should have implicated a duty to inquire further. Although the trial court had a duty to investigate the potential for a conflict when it vacated the severance, the court did not err by not giving defendant any further explication of the perils of joint representation. The magistrate cautioned defendant before the cases were severed that "with respect of particular defenses and decisions, such as whether or not to take the stand or to call particular witnesses or how to conduct a cross examination what may be in one's best interest will turn out not to be in the best interest of the other." While it would have been advisable to repeat this admonition, it was not necessary to do so. We are satisfied that the magistrate's Foster hearing, ______ supplemented by the trial court's determination that the defenses were consistent, adequately explored the potential -13- 13 for a conflict and ensured that defendant was not ignorant or misadvised in his choice of counsel.4 Defendant's Burden of Showing Conflict of Interests Defendant's Burden of Showing Conflict of Interests ___________________________________________________ Our determination that an adequate inquiry occurred does not end our analysis of whether a conflict of interests violated defendant's right to effective assistance of counsel. Rather, because a satisfactory inquiry appears in the record, we turn to whether defendant carried the burden of showing that an actual conflict adversely affected his lawyer's performance. Mazzaferro, 865 F.2d at 455; Foster, __________ ______ 469 F.2d at 5. Defendant makes two arguments in an effort to carry that burden. First, he asserts that a conflict of interests resulted in the disparity between his sentence and Perez's (188 months versus time served). We cannot infer from that disparity, however, that a conflict of interests adversely affected his lawyer's performance. According to the government, Perez's drastically lower sentence reflected her substantial assistance in obtaining convictions in unrelated cases. ____________________ 4. One might argue that the trial court had a duty to inquire further into the potential for a conflict of interests prior to accepting defendant's guilty plea, where Perez, still represented by Quinones, changed her plea several hours earlier. We decline to consider that issue, however, because neither party has addressed it. -14- 14 Defendant's remaining claim of ineffective assistance pertains to the circumstances surrounding his decision to change his plea several hours after Perez changed hers. While this may be a stronger claim, our ability to evaluate it is hampered by the state of the record. There is little evidence regarding defendant's decision to plead guilty. In addition, we have no record of what transpired during Perez's change of plea hearing. The government stated at oral argument that defendant sat in the courtroom while Perez accepted the government's version of the facts at her change of plea hearing. But neither her plea agreement, nor the transcript of her Rule 11 hearing is part of the record in this case. The record does not indicate that Perez would have testified if defendant had gone to trial. Cf. Trammel ___ _______ v. United States, 445 U.S. 40, 53 (1980) (witness-spouse _____________ holds privilege to refuse to testify adversely). Consequently, we cannot fairly assess whether a conflict of interests infected Quinones's representation of defendant during plea negotiations and his change of plea hearing. Because this is not a case where the record allows us to evaluate fully and fairly the merits of defendant's claim of ineffective assistance of counsel, we deny his request on direct appeal for leave to withdraw his plea. See United ___ ______ States v. Rinard, 956 F.2d 85, 87 (5th Cir. 1992). Defendant ______ ______ -15- 15 may raise the claim anew, if he so chooses, in a habeas corpus petition. Affirmed. Affirmed. _________ -16- 16