# United States Court of Appeals
## For the First Circuit

No. 00-1735

KEITH MOUNTJOY,

Petitioner, Appellant,

v.

WARDEN, NEW HAMPSHIRE STATE PRISON,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Boudin, Lynch, and Lipez, Circuit Judges.

Michael J. Sheehan for appellant.
Ann M. Rice, Senior Assistant Attorney General, with whom Philip T. McLaughlin, Attorney General for the State of New Hampshire, was on brief for appellee.

April 3, 2001

**LIPEZ, Circuit Judge.** Habeas corpus petitioner Keith Mountjoy argues that his convictions for sexual assault and burglary must be set aside because the New Hampshire judge who presided over his trial did not advise him about his defense counsel's possible conflict of interest and make an appropriate inquiry on the record, thereby violating his Sixth Amendment right to counsel. Federal review of habeas petitions is governed by the Anti-Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d) (Supp. II 1996). Under the standards of AEDPA, the district court denied Mountjoy's petition, finding that the underlying decision of the New Hampshire Supreme Court was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. We affirm.

## I.

The facts in this case are not disputed. In 1992, Keith Mountjoy was charged with aggravated felonious sexual assault and burglary. The victim was bound and raped by a man who came into her apartment in the early hours of January 4, 1992. One of the government's witnesses was Dennis Pratte, a police officer for the town of Newmarket who responded when the victim's son called the police. Officer Pratte testified about interviewing the victim and collecting physical evidence. He gave testimony favorable to Mountjoy, reporting

that the victim said she could not identify her attacker on the morning after she was raped.

Mountjoy's first and second trials ended in hung juries. Defense counsel Stephen Jeffco represented Mountjoy at both trials, and Officer Pratte testified for the government at both. In January 1994 Jeffco agreed to defend Officer Pratte against charges of sexually assaulting his stepdaughter. Shortly before Mountjoy's third trial began on April 11, 1994, Jeffco told the trial judge that he was representing Pratte, who was then awaiting trial. Jeffco said he did not think the simultaneous representation of Mountjoy and Pratte posed a conflict of interest for him. The prosecutor agreed. Jeffco also informed the court that he had told Mountjoy he was serving as Pratte's lawyer, and that Mountjoy wanted Jeffco to continue representing him. Jeffco's disclosure to the court took place in an unrecorded in-chambers conference. Mountjoy was not present, and the judge did not speak to him about Jeffco's possible conflict of interest. Mountjoy did not object to Jeffco's representation at trial.

While the record does not include transcripts of the first two trials, Mountjoy does not dispute that Pratte gave essentially the same testimony at the third trial that he had given at the first two, and that Jeffco cross-examined him in much the same way. Pratte's

testimony was again helpful to the defense.[1]  In his closing argument to the jury, Jeffco generally criticized Pratte's police department for its investigation of the crime, particularly because of its failure to follow up on a lead about a possible second suspect.

On April 15, 1994, the jury convicted Mountjoy of both charges.  The court imposed a 15 to 30 year sentence.  On May 23, Mountjoy filed a pro se motion for judgment of acquittal on the ground that his counsel had a conflict of interest.  The trial court appointed a public defender to represent Mountjoy during post-trial proceedings. In February 1995, the public defender filed a motion to set aside the verdict based on the court's failure to inquire into Jeffco's conflict of interest and ineffective assistance of counsel.  The trial court held a hearing on the matter on August 10, 1995.  Mountjoy testified that Jeffco did not tell him about the simultaneous representation of Officer Pratte.  In a deposition, Jeffco said that he told Mountjoy he was representing Pratte during a brief conversation on the steps of the courthouse just before the beginning of the third trial.  Jeffco said he did not specifically remember Mountjoy's response, but that Mountjoy

---

[1] The victim lived in the same apartment complex as Mountjoy, and she testified that a few days after being attacked she heard him outside calling his dogs and identified him by voice as her assailant. Officer Pratte testified, however, that the morning after the rape the victim said she had no idea who the attacker was, and that she could not clearly hear his voice because it was muffled by something that covered the lower half of his face.  On cross-examination by Jeffco, Officer Pratte added that the victim told him that her attacker did not have a distinctive accent.

-4-

had consented to the concurrent representation.  When asked about his cross-examination of Pratte, Jeffco said he did not try to impeach Pratte because Pratte's testimony was exculpatory.

The trial court denied Mountjoy's motion for a new trial. The court found that Mountjoy knew about the concurrent representation, that Jeffco had defended the case in the same way at the third trial as he had at the first and second ones, and that the defense would have called Pratte as a witness because of his exculpatory testimony had the government not done so.  The court acknowledged that it should have discussed Jeffco's representation of Pratte with Mountjoy before trial, but held that its failure to do so did not warrant reversal.  The court also denied Mountjoy's claim that Jeffco did not provide Mountjoy effective assistance of counsel because of the possible conflict.

Mountjoy appealed to the New Hampshire Supreme Court.  In a published opinion, the court denied relief.  See State v. Mountjoy, 708 A.2d 682 (N.H. 1998).  Mountjoy filed a petition for habeas relief in state court on July 7, 1999.[2] The lower state court held a hearing on September 10, 1999, and denied relief on September 23.  The New Hampshire Supreme Court declined to hear Mountjoy's collateral appeal. Mountjoy filed a habeas petition in federal court on January 12, 2000, seeking collateral review of three claims: the trial judge's failure to

---

[2] Mountjoy previously filed a habeas petition in federal court on October 8, 1997 that was dismissed for lack of exhaustion.

discuss with him before trial his right to conflict-free representation, ineffective assistance of appellate counsel, and delay in processing his state court appeal. After the district court denied the petition on all three grounds, it granted Mountjoy's request for a certificate of appealability as to whether the trial court proceedings violated Mountjoy's "constitutional right to conflict-free counsel."

## II.

AEDPA amended the federal law governing review of habeas petitions. In relevant part, the 1996 statute provides that

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1). AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." Williams v. Taylor, 529 U.S. 362, 412 (2000). Under the statute, "we focus the lens of our inquiry on the state . . . court's decision and ask whether the court's application of the analytic framework dictated by the relevant Supreme Court precedents

was objectively unreasonable" or contrary to that law.  See Williams v. Matesanz, 230 F.3d 421, 427-28 (1st Cir. 2000).

AEDPA's "contrary to" and "unreasonable application" clauses yield two separate categories of analysis. Taylor, 529 U.S. at 405; O'Brien v. Dubois, 145 F.3d 16, 24 (1st Cir. 1998).  A state court decision is "contrary to" federal law as determined by the Supreme Court, and so may be set aside on federal habeas review, if it "applies a rule that contradicts the governing law set forth in our cases" or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."  Taylor, 529 U.S. at 406.

Alternately, a state court decision may be set aside as an "unreasonable application" of federal law as determined by the Supreme Court "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id. at 408. In defining an unreasonable application of federal law, the Court said that "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law."  Id. at 410 (emphasis in original).  Thus under AEDPA, "a federal habeas

-7-

court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

In Mountjoy's case, the relevant state court decision for review under AEDPA is the New Hampshire Supreme Court decision on direct appeal in State v. Mountjoy, 708 A.2d 682 (N.H. 1998). As the New Hampshire court recognized, the governing Supreme Court precedents for Mountjoy's claim that the trial court's failure to advise him about Jeffco's possible conflict of interest violated his Sixth Amendment rights are Holloway v. Arkansas, 435 U.S. 475 (1978); Cuyler v. Sullivan, 446 U.S. 335 (1980); and Wood v. Georgia, 450 U.S. 261 (1981). "To the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness vel non [under AEDPA] of the state court's treatment of the contested issue." O'Brien, 145 F.3d at 25.

The New Hampshire Supreme Court neither applied a rule that contradicted the Supreme Court's holdings in these cases nor reached a different result based on a set of materially indistinguishable facts. Thus AEDPA's "contrary to" clause does not apply here. See Taylor, 529 U.S. at 406 ("a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause");

-8-

_Matesanz_, 230 F.3d at 426 ("A state court decision that applies the correct legal rule but reaches an independent outcome on different facts cannot be deemed to run at cross purposes to Supreme Court precedent."). We thus turn to AEDPA's second inquiry: whether the New Hampshire court unreasonably applied _Holloway_, _Sullivan_, and _Wood_ to the facts of Mountjoy's case. "This reduces to a question of whether the state court's derivation of a case-specific rule from the Court's generally relevant jurisprudence appears objectively reasonable." _O'Brien_, 145 F.3d at 25.

**III.**

A. Relevant Supreme Court Precedents

The Sixth Amendment guarantees a defendant's right to counsel in all criminal prosecutions. U.S. Const. amend. VI. Defendants have a "correlative right to representation that is free from conflicts of interest." _Wood_, 450 U.S. at 271. Even if defense counsel has a conflict, however, the court may sometimes allow the attorney to continue with the representation if the defendant makes a voluntary, knowing, and intelligent waiver. _See_ _Wheat_ v. _United States_, 486 U.S. 153, 163 (1988) (district courts have substantial latitude in declining to grant waivers); _Holloway_, 435 U.S. at 483 n.5 (a defendant may waive his right to representation that is "unhindered by a conflict of interests"). The purpose of a trial court's inquiry into a possible conflict is to "evaluate the conflict and ensure it is either

eliminated or waived." United States v. Rogers, 209 F.3d 139, 146 (2d Cir. 2000). The inquiry thus includes an on-the-record discussion of the representation with the defendant. Cf. Fed. R. Crim. P. 44(c) ("[T]he court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation."). When courts do not obtain a waiver to conflict-free counsel (and even sometimes when they do), defendants may challenge the representation on appeal by bringing an ineffective assistance claim. See Wheat, 486 U.S. at 162.

The extent of the trial court's responsibility to make an inquiry into the defendant's understanding of a possible conflict is the subject of the Supreme Court's decisions in Holloway, Sullivan, and Wood. In Holloway, one defense lawyer represented three co-defendants. In pre-trial motions and at trial, the lawyer repeatedly objected to the joint representation, telling the judge that his conflicting loyalties to his clients hindered his ability to advocate for them. The judge refused to appoint separate counsel and did not adequately inquire into the risk posed by the conflict. Holloway, 435 U.S. at 484. On appeal, the Supreme Court held that the Sixth Amendment requires automatic reversal of a conviction "whenever a trial court improperly requires joint representation over timely objection." Id. at 488. Holloway premised its holding on the shared responsibility

of the trial court and defense counsel to prevent conflicts from infringing on the defendant's Sixth Amendment rights.   <u>Id.</u> at 485.[3]

In <u>Sullivan</u>, the Court considered two questions left open in <u>Holloway</u>: whether a state trial judge must inquire about multiple representation even though no party objects at trial, and whether the "mere possibility of a conflict" means that a defendant's Sixth Amendment rights were violated.   <u>Sullivan</u>, 446 U.S. at 345. Emphasizing defense counsel's ethical obligation to advise a trial court when a conflict arises, the Court said that when defense counsel does not alert the court to a conflict by objecting, "nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case." <u>Id.</u> at 346. At the same time, the Court left open some possibility, albeit a narrow one, that <u>Holloway</u> may apply without an objection by the defendant.

> Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. . . . Unless the trial court knows or reasonably should know that a

---

[3] The Court has explained that judges sometimes must serve as a check against defense attorneys who may be less sensitive about avoiding such conflicts than they should be. <u>Wheat</u>, 486 U.S. at 163 ("Nor is it amiss to observe that the willingness of an attorney to obtain such waivers [of conflicts of interest] from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.").

> particular conflict exists, the court need not
> initiate an inquiry.

Id. at 346-47 (footnotes omitted).

Addressing the relationship between a possible conflict and a Sixth Amendment violation, Sullivan next held that when a defendant does not object to a possible conflict and the trial judge is not otherwise alerted to such a conflict, the defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Id. at 348. This showing of harm need not, however, rise to the level of prejudice. Instead, "prejudice is presumed when counsel is burdened by an actual conflict of interest." Strickland v. Washington, 466 U.S. 668, 692 (1984). This presumption means that a defendant need not show that he would not have been convicted but for choices his lawyer made because of conflicting loyalties. Sullivan, 446 U.S. at 349-50. Instead, the necessary showing might involve failure to cross-examine a witness whose testimony favored one defendant in a joint representation over the other. Id. at 350.

In Wood v. Georgia, in an unusual factual context, the Court again addressed the question of a trial court's responsibility to inquire about a possible conflict. In Wood, three employees of an adult theater and bookstore were convicted of distributing obscene materials and sentenced to probation on the condition that they make installment payments toward $5,000 and $10,000 fines. The defendants

defaulted on their payments, saying that they had expected their employer to pay the fines for them. The Supreme Court granted certiorari to determine whether imprisoning a probationer because he cannot pay a fine violates the Equal Protection Clause. Wood, 450 U.S. at 264. After hearing the case, however, the Court decided it on a different due process ground. The Court noted that the employer's lawyer had represented the defendants throughout the proceedings against them, and that this lawyer did not challenge the amount of the fines imposed at sentencing. Id. at 266-268. The trial court was aware of these circumstances and the prosecutor raised the question of whether they gave rise to a conflict of interest. Id. at 272-73.

Based on the record, the Court concluded that a possible conflict of interest was "sufficiently apparent . . . to impose upon the court a duty to inquire further." Id. at 272. In response to the dissent's argument that the majority had "gone beyond" Sullivan, the Court said:

> nothing in that case rules out the raising of a conflict-of-interest problem that is apparent in the record. Moreover, Sullivan mandates a reversal when the trial court has failed to make an inquiry even though it 'knows or reasonably should know that a particular conflict exists.'

Id. at 272 n.18 (quoting Sullivan, 446 U.S. at 347).

Wood thus emphasized that trial judges have a duty to inquire not only when defendants object to a possible conflict, but also when

trial judges are or should be independently aware of a possible conflict. Yet the Wood Court did not impose the remedy of a new trial based on the trial judge's failure to make the required inquiry, despite the above-quoted language from its own footnote about Sullivan mandating reversal under such circumstances. Moreover, without discussing the implications for Holloway's rule of automatic reversal, the Court remanded the case for a hearing to determine "whether the conflict of interest that this record strongly suggests actually existed." Id. at 273.

Not surprisingly, the circuit courts have ruled differently in the wake of Wood about the type of remedy that is triggered when the trial court has a duty to inquire about a possible conflict and fails to do so. Some courts have reversed for a new trial whenever the possibility of a conflict was sufficiently apparent to impose a duty to inquire. See Riggs v. United States, 209 F.3d 828, 831 n.1 (6th Cir. 2000); United States v. Cook, 45 F.3d 388, 393-94 (10th Cir. 1995); Dawan v. Lockhart, 980 F.2d 470, 474-75 (8th Cir. 1992). One court has held that a post-trial inquiry into a possible conflict that was evident before trial does not suffice. See Rogers, 209 F.3d at 146. By contrast, we have held that in light of Wood, automatic reversal is not required if a trial judge holds a post-trial hearing about whether an actual conflict developed that adversely affected counsel's performance, the standard for reversal under Sullivan. Brien v. United

States, 695 F.2d 10, 15 n.10 (1st Cir. 1982) (petitioner's § 2255 hearing could "serve the same function that the remand served in Wood"). With this background in mind, we turn to the New Hampshire Supreme Court's decision in Mountjoy's appeal.

B. The New Hampshire Supreme Court's Decision

On appeal to the New Hampshire Supreme Court, Mountjoy argued that the trial court's failure to advise him about Jeffco's possible conflict of interest required reversal of his conviction under Holloway and Hopps v. State Board of Parole, 500 A.2d 355 (N.H. 1985). In Hopps, the state Supreme Court established a prophylactic rule for criminal cases involving multiple representation. The rule requires defense counsel and the trial court to make a record of investigating the possibility of a conflict of interest and of each client's informed consent to the dual representation. Id. at 359. The Hopps court stated that judicial inquiry into possible conflicts was not constitutionally required, but was "the better course" because of the risk of conflict posed by multiple representation and the desirability of avoiding post-conviction challenges. Id.

In deciding Mountjoy's appeal, the New Hampshire Supreme Court held that Hopps should apply when the trial court is made aware of a possible conflict based on a defense attorney's concurrent representation of a defendant and a government witness because of the "similar risk of conflict in such dual representation." Mountjoy, 708

- 15 -

A.2d at 683-84.  The court said that Jeffco's disclosure to the trial judge that he was representing Pratte should have prompted the judge to discuss the possible conflict with Mountjoy.  See id.

The court next considered whether Mountjoy was entitled to a reversal of his conviction because of the trial court's failure to conduct a Hopps inquiry and secure the defendant's waiver of conflict-free counsel.  The court concluded that Mountjoy was not entitled to Holloway's automatic reversal because such reversal is mandated only when "a trial court improperly requires joint representation [of codefendants] over timely objection."  Id. at 684 (citing Holloway, 435 U.S. at 488).  The court ruled that the failure to inquire "merely requires this court to address a defendant's claim that he was denied the effective assistance of counsel because of a conflict of interest." Id.  Noting that "[o]ur State constitutional standards are identical to their federal counterparts on this issue," and citing Sullivan as the federal standard, the court said that Mountjoy needed to show that Jeffco's conflict adversely affected his performance at the third trial.[4]  The court then stated the standard for showing adverse effect

_____

    [4] The court said that based on its own precedent Sullivan applied to possible conflicts arising from situations other than joint representation.  See Mountjoy, 708 A.2d at 684 (citing State v. Cyrs, 529 A.2d 947, 950 (N.H. 1987)). This is the majority position among the circuits.  See, e.g., Riggs v. United States, 209 F.3d 828, 832 n.1 (6th Cir. 2000); Atley v. Ault, 191 F.3d 865, 870 n.4 (8th Cir. 1999); Spreitzer v. Peters, 114 F.3d 1435, 1451 (7th Cir. 1997); Porter v. Singletary, 14 F.3d 554, 560 (11th Cir. 1994).

- 16 -

that we set forth in <u>Brien</u> v. <u>United States</u>, 695 F.2d 10.[5]  <u>See</u>
<u>Mountjoy</u>, 708 A.2d at 684.  In <u>Brien</u>, we construed <u>Sullivan</u> as
requiring a petitioner to show first that his lawyer might have pursued
"some plausible alternative defense strategy or tactic," and second
that "the alternative defense was inherently in conflict with the
attorney's other loyalties or interests." <u>Id.</u> at 15.  Rather than
testing Mountjoy's claim against this standard, however, the New
Hampshire court found that Mountjoy had waived the issue of whether
Jeffco's conflict adversely affected his performance because he had not
briefed that issue on appeal.  <u>Mountjoy</u>, 708 A.2d at 685.

In closing, the court said that <u>Wood</u> also did not entitle
Mountjoy to the relief that he sought because the outcome in that case
was a remand rather than a reversal.  <u>Id.</u>  Since the trial court held
a post-trial hearing on Mountjoy's claim and determined that Jeffco's
representation was not affected by an actual conflict, Mountjoy had
already received the further consideration provided in <u>Wood</u> by a
remand.  <u>Id.</u>

The New Hampshire Supreme Court's conclusion that <u>Holloway</u>
and <u>Wood</u> did not require reversal of Mountjoy's conviction was a

---

[5] On this point the New Hampshire Supreme Court cited its own
precedent, <u>State</u> v. <u>Guaraldi</u>, 500 A.2d 360, 365 (N.H. 1985), which in
turns cites <u>Brien</u>, 695 F.2d at 15.

reasonable application of Supreme Court precedent.[6]  It is true that the trial court knew about Jeffco's possible conflict and so had a duty to inquire under Sullivan and Wood.  See also United States v. Hernandez-Lebron, 23 F.3d 600, 604 (1st Cir. 1994) ("[I]nquiries must be made into the propriety of multiple representation whenever the trial court knows or reasonably should know that a particular conflict exists.").  However, despite Wood's statement that Sullivan mandates reversal when the court does not make the required inquiry, the Supreme Court in Wood did not grant a reversal in light of the lawyer's possible conflict of interest, but rather remanded for further investigation.  As the New Hampshire court recognized, in Mountjoy's case that investigation occurred when the trial judge held a post-trial hearing to determine whether an actual conflict burdened Jeffco's representation.

The New Hampshire Supreme Court took the same approach to the Supreme Court case law that this court took in Brien v. United States, 695 F.2d 10.  In that case, the defendant argued in a federal habeas petition that he was entitled to reversal under Holloway because he had been represented at trial by a lawyer who belonged to the same law firm as his codefendant's lawyer.  While Brien's counsel did not bring the

---

[6]We think the New Hampshire Supreme Court's application of these precedents was largely correct.  Our only quibble is that the court did not seem to recognize that the Hopps duty of inquiry, which applies when a trial judge "is made aware of any potential for, or actual, conflict of interest," Mountjoy, 708 A.2d at 683, is essentially a statement of the constitutional rule set forth in Sullivan and Wood.

conflict to the court's attention before trial, his codefendant's counsel did.  In response to Brien's habeas petition, the district court held an evidentiary hearing, just as the New Hampshire court did after Mountjoy's trial.  Based on the evidence presented at the hearing, the district court found that Brien had not met his burden of proving an actual conflict under Sullivan.  Id. at 15.

On appeal in Brien, we asked whether the trial court's failure to inquire about the possible conflict before trial itself required reversal of Brien's conviction, and found that it did not.  We reasoned that by remanding Wood for further inquiry by the trial court, the Supreme Court signaled that convictions should only be reversed if there is a finding of an actual conflict that adversely affected the lawyer's performance.  Id. at 15 n.10.  We thus concluded that the petitioner's habeas hearing could "serve the same function that the remand served in Wood."  Id.

Like the habeas hearing in Brien, the post-trial evidentiary hearing that the New Hampshire trial court conducted in response to Mountjoy's motion for a new trial also served the purpose of the remand in Wood.  The court reexamined the trial transcript and the pleadings, and heard testimony about Jeffco's possible conflict.  The court's factual findings go directly to the question of whether Jeffco's representation of Pratte adversely affected his performance as Mountjoy's counsel, the standard for reversal under Sullivan.  Jeffco

- 19 -

had represented Mountjoy in two previous trials and had cross-examined Pratte at both, and the trial court concluded that he conducted the cross-examination at the third trial in the same way that he had before he became Pratte's lawyer. The court thus found that the facts of the case lent unusual certainty to the conclusion that Jeffco's dual representation did not cause Mountjoy harm.[7]

We conclude, therefore, that the New Hampshire Supreme Court reasonably applied Holloway, Sullivan, and Wood in holding that the trial court's failure to advise Mountjoy about his lawyer's possible conflict of interest did not require automatic reversal, and that the

---

[7]The state habeas court also addressed this actual conflict issue in its consideration of Mountjoy's claim of ineffective assistance of appellate counsel. In the state habeas proceeding, which included another evidentiary hearing on the actual conflict issue, Mountjoy argued that his appellate counsel was ineffective because he failed to argue to the New Hampshire Supreme Court that Jeffco had an actual conflict that adversely affected his performance. Mountjoy reiterated this claim in his habeas petition to the federal district court. Applying AEDPA, the district court found that the state habeas court reasonably applied federal law, denying Mountjoy's ineffective assistance claim after reviewing the three alternative strategies that Mountjoy argued Jeffco might have pursued at the third trial had he not been representing Pratte. Mountjoy argued that had Jeffco not concurrently represented Pratte, he could have (1) argued to the jury that the police, not the victim, originally suggested Mountjoy as the attacker; (2) mounted a stronger attack on the police investigation of the crime; (3) impeached Pratte by questioning him about his indictment for sexual assault. The state habeas court found that the first two theories were not supported by the evidence, and that the third one was precluded by the rules of evidence and thus found that Mountjoy's appellate counsel made a "prudent and reasonable decision" not to pursue the actual conflict claim under Burger v. Kemp, 483 U.S. 776, 784 (1987) (appellate counsel has discretion to choose stronger claims over weaker ones).

- 20 -

post-trial evidentiary hearing held on the matter served the same function as the remand granted in Wood.  Following the standards of AEDPA, we affirm.

**Affirmed**.